Argued March 6, affirmed April 15, petition for
rehearing denied April 28, 1964

STATE OF OREGON *v.* HIXSON ET AL
391 P. 2d 388

*Glenn D. Ramirez,* Klamath Falls, argued the cause
and filed a brief for appellants.

*Sam McKeen,* Deputy District Attorney, Klamath Falls, argued the cause for respondent. With him on the brief were Dale T. Crabtree, District Attorney, and J. R. Thomas, Deputy District Attorney, Klamath Falls.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, DENECKE and LUSK, Justices.

SLOAN, J.

Defendants were convicted of horse stealing and appeal. Defendants admitted that they took the animals. Their defense was that the horses were on the open range and that the custom of the country gave a color of right to the taking. Several assignments of error have been made.

■ During the course of the trial it appeared that defendant Chocktoot's wife had been a witness to the taking and to certain other material events. It also appeared that Mrs. Chocktoot was to be called, by the state, as a witness. Counsel for defendants advised the court and prosecutor, in the absence of the jury, that defendant Chocktoot would not give his consent to his wife's testifying. Nevertheless, the court permitted the prosecutor to call Mrs. Chocktoot to the witness stand and in the presence of the jury, defendant was obliged to express his refusal to consent. It is claimed that this was prejudicial error.

In criminal cases the husband-wife privilege is governed by ORS 139.320. It provides:

"In all criminal actions in which the husband is the party accused, the wife is a competent witness and when the wife is the party accused, the husband is a competent witness; but neither husband nor wife in such cases shall be compelled or allowed

to testify in such cases unless by consent of both of them; provided, that in all cases of personal violence upon either by the other or of personal violence or other unlawful act committed against any minor child of either or both of the parties, the injured party, husband or wife, shall be allowed to testify against the other; provided, further, that in all criminal actions for polygamy or adultery, the husband or wife of the accused is a competent witness and shall be allowed to testify against the other without the consent of the other as to the fact of marriage."

This statute and the problem immediately before us are not new to the court. In *State v. Parker,* 1911, 60 Or 219, 220, 118 P 1011, the court observed:

"No particular method is provided by statute for obtaining the consent of a defendant to his wife's testifying, and perhaps the fairer method would be to ask that consent in the absence of the jury. We are not prepared to say, however, that counsel has not the right to ask that consent in open court."

In *State v. Dennis,* 1945, 177 Or 73, 159 P2d 838, 161 P2d 670, Justice Brand exhaustively examined the subject. The case held that it was not error to call the witness and, thereby, require the defendant to express lack of consent before the jury. Although we have re-examined the problem at length we are satisfied that there is no compelling reason to overrule the *Dennis* case.

Defendant Chocktoot attempts to distinguish the *Dennis* case on the basis of an instruction given in *Dennis* that the refusal to permit his wife to testify could not have been held against *Dennis.* That instruction was not given in the instant case. Study of the decision in *Dennis* is convincing that the instruc-

tion was not significant in the analysis of the problem decided. The decision would have been the same if the instruction had not been given.

■ Defendants also say the court erred in refusing to give certain requested instructions relating to defendants' evidence about the alleged custom of the country. The instructions that were given were clear and precise. If the jury had been convinced by defendants' evidence the instructions given would have provided the jury ample reason for a verdict of not guilty. The court did not err when it declined to give the requested instructions.

■ The animals taken were less than a year old. They were described in the indictment as "mares." Some of defendants' witnesses expressed the opinion that the animals were too young to be classified as mares. Defendants, in reliance in *State v. Russell,* 1962, 231 Or 317, 372 P2d 770, claim a fatal variance between the charge in the indictment that they stole mares and the evidence that the animals were not mares. Within the precise lexicon of the sophisticated equestrian the words may have the distinct meaning claimed for them. We think the indictment sufficiently identified the animals to enable defendants to know what they were charged with taking. In *Russell* there was the difference that a heifer could never be a steer. In the immediate case a mare can be young or old and still be identified as a mare.

The judgment is affirmed.