Argued February 17, affirmed March 25, 1971

## STATE OF OREGON, *Respondent, v.*
## JOHN JORDAN KELLY, *Appellant.*

482 P2d 748

*John G. Meyer*, Eugene, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Upon trial by jury, defendant was convicted of burglary in a dwelling in violation of ORS 164.230.[1] He appeals contending that the trial court erred (1) in refusing to grant a mistrial after the jury heard some testimony concerning a pistol found near the scene but which was not shown to have been used by, or connected with, defendant, and (2) in refusing to grant a motion for judgment of acquittal on the grounds that the state had not proved an intent to steal.

On the afternoon of November 20, 1969, the complaining witness, James Robert Freeman, was reading in bed at his home near Florence when he heard a motor vehicle being driven up his driveway. He then heard the sounds of footsteps on his driveway and of the screen door being opened, followed by "loud banging," first on his front door, then on his back door. Both doors were locked. Mr. Freeman got out of bed and observed a pickup truck being driven up the driveway of the house next door. He then heard the sound of similar pounding on the door of the adjoining house, and observed a man running along the walkway from the adjoining house.

---

[1] ORS 164.230 provides:

"Any person who breaks and enters any dwelling house with intent to commit a crime therein, or having entered with such intent, breaks any dwelling house, or is armed with a dangerous weapon therein, or assaults any person lawfully therein, is guilty of burglary, and shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years."

Soon after, Mr. Freeman again heard loud banging, first on his front door and then on the back door. He became alarmed, grabbed a fully loaded automatic pistol and went to the door of his bedroom from which point he could observe the back door only a few feet away. He heard the door being tried. At this instant the two locks on the door gave way and a man, later identified as the defendant, burst through the door into Freeman's home. Mr. Freeman pointed the gun at the defendant and commanded him to halt, whereupon the defendant turned and left. Asked how the defendant left the premises, Mr. Freeman answered, "Very fast." He was shortly apprehended, however.

At the trial, Mr. Freeman, after describing the alleged crime, further testified that four days after the incident he had discovered a pistol in a box next to his house.

The testimony was:

"Q [Prosecutor] Now, did you find anything shortly after this incident in the back porch area that you thought was unusual?
"A [Freeman] Yes, sir, I did.

"Q And approximately when did you find that?
"A I found it the following Monday [the alleged crime occurred on the preceding Thursday].

"Q And what did you find?
"A A pistol.

"Q And where was that pistol located?
"A It was located off the walk, between the porch and the door, the little door in the garage, to the right in a box.

"MR. DENNETT [Defense Counsel]: I think there is a preliminary matter we may have to discuss.

"THE COURT: I think we will take a recess at this time. Just remain here until the jury goes out."

The trial judge, the prosecutor and the defense attorney thereupon entered into a discussion relative to the admissibility of the testimony concerning the pistol. After a brief discussion, during which the prosecution made what amounted to an offer of proof and defendant's counsel voiced his objections, the court announced that no more testimony would be heard about the pistol until a later time, since it had not been connected up with the defendant or his companion. Defendant then moved for a mistrial on the ground that the evidence was prejudicial. The court denied his motion but offered to instruct the jury to disregard the quoted testimony. When the jury returned, the judge, at defendant's request, instructed the jury as follows:

"Ladies of the jury, I instruct you that, in regard to the witness's last statements and anything relative thereto, concerning any pistol, that you are to strike those from your mind, disregard them, pay no attention, no attention, to them. They are out of this case as far as you are concerned."

We consider first the defendant's contention that the court erred in denying his motion for mistrial. The defendant argues that the statement by the witness Freeman concerning the pistol was so prejudicial to the defendant that no curative instruction by the court would have been sufficient to erase the effect of his statement from the minds of the jurors.

■ The granting or refusal of a motion for mistrial is a matter within the discretion of the trial court. The court's ruling will not be disturbed unless

an abuse of discretion is shown. *State v. Smith,* 4 Or App 261, 263-64, 478 P2d 417 (1970). Little testimony concerning the pistol was heard by the jury. No attempt had yet been made by the state to connect the pistol with either the defendant or his companion. The judge's instruction to disregard this testimony was emphatic and to the point. It was not an abuse of discretion for the judge to have concluded that his instruction to the jury would be sufficient to counteract any prejudicial effect that might have resulted from Mr. Freeman's testimony. *State v. Smith,* supra.

■ The defendant next assigns as error the court's refusal to grant a motion for judgment of acquittal on the grounds that an intent to steal had not been proved by the state. Circumstantial evidence may be sufficient to prove an intent to steal, even though nothing was actually taken. *State v. Hicks,* 213 Or 619, 626-29, 325 P2d 794 (1958); *Hebb v. State,* 10 Md App 145, 268 A2d 578 (1970). In this case, as we have already noted, the conduct of the defendant even prior to the break-in, was highly suspicious. The defendant pounded loudly on Mr. Freeman's front and back doors, not once, but on two separate occasions within a space of a few minutes of each other. This would have been sufficient to allow the defendant to assume that no one was at home. He then forced the rear door open by breaking the two locks thereon, effected his forcible entry into the dwelling, but immediately took flight when confronted by the householder. This was not only a breaking and entering but was a breaking and entering sufficient in law to constitute burglary, if all other elements of the offense were present. No contention is made that any other element of the crime was not proven by the state. All of the foregoing facts taken together afford ample evidence from which the jury

could have concluded that defendant had broken and entered the dwelling with an intent to steal.

Affirmed.